UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ANTHONY SAMUEL CATO,

                 Plaintiff,

    v.

DEPARTMENT OF CORRECTIONS, et al.,

               Defendants.

_____/

1:08-cv-00555-LJO-SMS-PC

ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND

ORDER FOR PLAINTIFF TO EITHER FILE FIRST AMENDED COMPLAINT OR NOTIFY THE COURT THAT HE WISHES TO PROCEED ONLY ON THE CLAIMS FOUND COGNIZABLE BY THE COURT

ORDER FOR CLERK TO SEND COMPLAINT FORM TO PLAINTIFF

THIRTY DAY DEADLINE TO FILE FIRST AMENDED COMPLAINT OR NOTIFY THE COURT

## I.    RELEVANT PROCEDURAL HISTORY

Anthony Samuel Cato ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff filed this action on April 22, 2008.

## II.    SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

1

1   "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

2   dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a

3   claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

4   　　　"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited

5   exceptions," none of which applies to § 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506,

6   512 (2002); Fed. R. Civ. Pro. 8(a).  Pursuant to Rule 8(a), a complaint must contain "a short and

7   plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a).

8   "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the

9   grounds upon which it rests." Swierkiewicz, 534 U.S. at 512.  A court may dismiss a complaint only

10   if it is clear that no relief could be granted under any set of facts that could be proved consistent with

11   the allegations.  Id. at 514.  Discovery and summary judgment motions - not motions to dismiss -

12   "define disputed facts" and "dispose of unmeritorious claims." Id. at 512.  "'The issue is not whether

13   a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the

14   claims.  Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely

15   but that is not the test.'" Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v.

16   Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004)

17   ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . .'" (quoting

18   Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001)).  However, "the liberal pleading standard .

19   . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989).

20   "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim

21   that were not initially pled."  Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir.

22   1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

23   **III.    SUMMARY OF COMPLAINT**

24   　　　Plaintiff is currently incarcerated at Corcoran State Prison ("CSP") in Corcoran, California,

25   where the events at issue allegedly occurred. The complaint alleges that defendants entered into a

26   conspiracy, retaliated against plaintiff for filing administrative appeals at the prison, failed to protect

27   him, and violated his rights to adequate medical care and due process.  Plaintiff alleges he suffered

28   injury from tainted food, beverages, and canteen items, from physical assault, prosecution for false

allegations, denial of medical attention, defamation, and an inadequate prison appeals process. Plaintiff names as defendants Sgt. P. Acosta, Derral G. Adams (Superintendent, CSP), Correctional Officer ("C/O") H. Barron, C/O Byrum, C/O J. Campbell (Asst. Institutional Gang Investigator), C/O Mr. Carrol, C/O Mrs. Carrol, C/O P. Castillo, C/O J. Castro, Sgt. Dicks, C/O Docanto, C/O Dominguez, Medical Technical Assistant ("MTA") Florez, C/O Garcia, Sgt. A. Garcia, C/O H. Hammon, Capt. M. Jennings, M. Junious (Associate Warden, CSP), Lt. J. A. Keener, C/O Kelly, C/O S. Licon, C/O S. Lonloria, Lopez (Associate Warden, CSP), C/O Martinez, Sgt. Martinez, Sgt. J. Moore, C/O Naranjo, MTA R. Pascua, C/O J. Payne, C/O L. Scott, C/O M. Singh, C/O Solano, Tillton (Director of the California Department of Corrections and Rehabilitation ("CDCR")), Sgt. A. Trujillo, and C/O Williams.  All named defendants are employees of the California Department of Corrections and Rehabilitation ("CDCR").  Plaintiff also names more than thirty other persons in the body of the complaint who were not included on plaintiff's list of named defendants.  Plaintiff requests as relief compensatory and punitive damages, declaratory judgment, preliminary and permanent injunctive relief, and costs and attorney fees.

## IV.   PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "Section 1983 . . .  creates a cause of action for violations of the federal Constitution and laws."  Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted).  "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress."  Id.

### A.   Linkage Requirement

Section 1983 plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A

person deprives another of a constitutional right, where that person 'does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'" Hydrick v. Hunter, 500 F.3d 978, 988 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "[T]he 'requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" Id. (quoting Johnson at 743-44).

In the complaint, plaintiff does not allege any facts whatsoever concerning named defendants C/O Byrum, Associate Warden Lopez, C/O Solano, or Tillton.  Thus, plaintiff fails to state a claim for relief under section 1983 against defendants C/O Byrum, Associate Warden Lopez, C/O Solano, or Tillton.

## B.    Rule 8(a)

Plaintiff's complaint consists of forty-five handwritten pages divided into one hundred forty-eight numbered paragraphs, with thirty-five named defendants and more than thirty other named persons who may qualify as defendants, and as such, fails to comply with Federal Rule of Civil Procedure 8(a), which calls for a "short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8(a) expresses the principle of notice-pleading, whereby the pleader need only give the opposing party fair notice of a claim.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Rule 8(a) does not require an elaborate recitation of every fact a plaintiff may ultimately rely upon at trial, but only a statement sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Id. at 47.  Plaintiff shall be granted leave to file an amended complaint that complies with Rule 8(a).

## C.    Official Capacity

Plaintiff states in the complaint that "[E]ach defendant is being sued individually and in his or her official capacity."

The Eleventh Amendment bars damages actions under section 1983 against state officials in their official capacity.  See Doe v. Lawrence Livermore Nat'l Lab., 131 F.3d 836, 839 (9th Cir.

1997); Eaglesmith v. Ward, 73 F.3d 857, 859 (9th Cir. 1996); Pena v. Gardner, 976 F.2d 469, 472 (9th Cir. 1992). For this reason, a damages claim against any of the defendants in thier official capacity is not cognizable and must be dismissed from the action. "However there is one exception to this general rule: When sued for *prospective injunctive relief*, a state official in his official capacity is considered a "person" for § 1983 purposes." Doe, 131 F.3d at 839. "[A] suit for prospective injunctive relief provides a narrow, but well-established, exception to Eleventh Amendment immunity." Id. (*citing* Young, 209 U.S. 123 (1908))

The Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacity. See Hafer v. Melo, 502 U.S. 21, 30 (1991); Ashker v. California Dep't of Corrections, 112 F.3d 392, 394 (9th Cir.), cert. denied, 118 S. Ct. 168 (1997); Pena, 976 F.2d at 472. "Personal-capacity suits seek to impose personal liability upon a government official for actions [the official] takes under color of state law. See Kentucky v. Graham, 473 U.S. 159, 165 (1988). Where plaintiff is seeking damages against a state official, such as in the instant action, this "necessarily implies" a personal-capacity suit because an official-capacity suit would be barred. See Cerrato v. San Francisco Community College Dist., 26 F.3d 968, 973 n.16 (9th Cir. 1994); Shoshone-Bannock Tribes v. Fish & Game Comm'n, 42 F.3d 1278, 1284 (9th Cir. 1994); Price v. Akaka, 928 F.2d 824, 828 (9th Cir. 1991).

Therefore, plaintiff fails to state a claim for damages under section 1983 against any of the defendants in their official capacities.

### D. Defendants in This Action are not Clearly Identified

Plaintiff names thirty-five defendants on his list of named defendants beginning on page 2 of the complaint. Plaintiff also names more than thirty additional persons in the body of the complaint beginning on page 10. The complaint does not clearly indicate which of these additional persons plaintiff intends to include as defendants in this action.

Plaintiff also makes allegations against C/O Carrol but fails to indicate whether the allegations are against C/O **Mr.** Carrol or C/O **Mrs.** Carrol, who are both named as defendants.

Plaintiff shall be given leave to file an amended complaint which clearly names all of the

///

defendants in this action and distinguishes between C/O **Mr.** Carrol and C/O **Mrs.** Carrol when making allegations.

> **E.**     **First Cause of Action**[1]

>> **1.**     **Cruel and Unusual Punishment under the Eighth Amendment**

>>> **a.**     *Adverse Conditions of Confinement -- Tainted Food Trays/Canteen Purchase*

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain . . . ." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint, 801 F.2d at 1107; Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45. Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. Id. at 844-45. Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Id. at 835; Frost, 152 F.3d at 1128.

///

---

[1]The court here addresses, in turn, the eleven causes of action enumerated by plaintiff in the complaint beginning on page 26.

1    "What is necessary to show sufficient harm for purposes of the Cruel and Unusual

2    Punishment Clause depends upon the claim at issue . . . ." <u>Hudson v. McMillian</u>, 503 U.S. 1, 8

3    (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive

4    to contemporary standards of decency." <u>Id</u>. at 8 (quotations and citations omitted). "[E]xtreme

5    deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim."

6    <u>Id</u>. at 9 (citation omitted). With respect to this type of claim, "[b]ecause routine discomfort is part

7    of the penalty that criminal offenders pay for their offenses against society, only those deprivations

8    denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis

9    of an Eighth Amendment violation." <u>Id</u>. (quotations and citations omitted). "[E]xtreme deprivations

10   are required to make out a conditions-of-confinement claim." <u>Hudson</u>, 503 U.S. at 9 (internal

11   quotation marks and citations omitted).

12       Plaintiff alleges that during the months of September 2006 through January 2008, defendants

13   Barron, Carrol, Castro, Cheema, Docanto, Dominguez, Espinoza, C/O Garcia, Hammon, Hernandez,

14   Jamison, Jorben, Licon, Luna, Magnas, Moore, Moreno, Mussleman, Naranjo, Payne, Parker, Perez,

15   Pruneda, Rodriguez, Romero, Scott, Singh, Wildes, Williams, and John/Jane Does served him

16   tainted food trays. Plaintiff alleges that on November 23, 2006, defendants Cheema, Espinoza,

17   Williams, and John/Jane Does brought him a Thanksgiving food tray with burned meat and

18   snuff/chew mixed in with the yams, then openly boasted about what they had done. Plaintiff also

19   alleges that on April 11, 2007, defendants Hernandez, Dominguez, Payne, Docanto, Licon,

20   Rodriguez tainted plaintiff's canteen purchase.

21       Plaintiff states a cognizable Eighth Amendment claim against defendants Cheema, Espinoza,

22   Williams, and John/Jane Does for knowingly serving him food mixed with snuff/chew. However,

23   plaintiff fails to allege sufficient facts showing that any other defendant acted with "deliberate

24   indifference to a substantial risk of serious harm" by serving him tainted food or tainted canteen

25   purchases.

26           **b.**    ***Excessive Force***

27       The use of excessive force by a prison official violates the Eighth Amendment. <u>Hudson v.</u>

28   <u>McMillian</u>, 503 U.S. 1 (1992). Determining whether there has been an Eighth Amendment violation

turns upon "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" See id. at 6 (quoting Whitley v. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078  (1986)).

To prevail on an excessive force claim, an inmate must show the official applied force "maliciously and sadistically" for the purpose of inflicting pain, rather than in a "good faith effort to maintain or restore discipline." Hudson 503 U.S. at 4-5, 7. Such factors as the need for the application of the force, the relationship between the need for the application of force and the amount of force used, and the extent of injury inflicted are relevant to the ultimate determination. Whitley, 475 U.S. at 319, 106 S.Ct. at 1078.  An inmate, however, does not need to have suffered an injury to establish an Eighth Amendment violation.  Hudson, 503 U.S. at 7.

Although the Eighth Amendment protects against cruel and unusual punishment, this does not mean that federal courts can or should interfere whenever prisoners are inconvenienced or suffer de minimis injuries. See id. at 9-10 (8th Amendment excludes from constitutional recognition de minimis uses of force).  The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir.2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)).  However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

Plaintiff alleges that on February 4, 2007, he was physically assaulted by defendants Barron, Pruneda, Singh, and Moore with pepper spray without justification.

Plaintiff also makes the following allegations concerning an incident occurring on March 2, 2007:  Plaintiff was standing at his cell door and observed C/Os Lonloria and Singh releasing handcuffed inmates to C/Os Barron and Castro who would escort them to C/Os Scott and Castillo. Singh traded positions with Castro when they neared plaintiff's cell.  Plaintiff was handcuffed behind

his back by Lonloria and released by Hammon, then handed off to Castro by Lonloria in the middle of C-section floor.  Castro walked plaintiff to the building rotunda, then blindsided him with two pummeling blows to the head and face with a closed fist.  Plaintiff fell to the ground and Castro then repeatedly slammed plaintiff's head and face into the concrete floor until he was bleeding profusely from his nose and mouth. Plaintiff suffered severe abrasions, a blood-filled left eye, and a deep gash in his left wrist.  Plaintiff believed his jaw bone was fractured.

Plaintiff states a cognizable claim against defendant Castro for excessive force under the Eighth Amendment for assaulting plaintiff.  However, plaintiff fails to allege sufficient facts demonstrating that any other defendant applied force "maliciously and sadistically" for the purpose of inflicting pain, rather than in a "good faith effort to maintain or restore discipline."

### c.   *Medical Care*

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  The "deliberate indifference" standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious."  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm.  Farmer, 511 U.S. at 837.  A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety."  Id.

Plaintiff alleges that on March 2, 2007, C/O Castro assaulted him, causing plaintiff to bleed profusely from his nose and mouth and to suffer severe abrasions, a blood-filled left eye, and a deep gash in his left wrist.  Plaintiff alleges that MTA Pascua falsely claimed there were no injuries and denied plaintiff medical attention.

Plaintiff states a cognizable claim against defendant MTA Pascua for inadequate medical care under the Eighth Amendment.

///

## 2. __Fourteenth Amendment Due Process__

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

### a. *Prison Grievance Procedures*

Plaintiff alleges on March 4, 2007, he mailed a request for an interview regarding the March 2, 2007, assault and battery to Cpt. Jennings, Lt. Callows, Lt. Rousseau and Sgt. J. Moore. Plaintiff alleges that although notified, these supervisors did nothing to protect plaintiff and the interview was denied. Plaintiff alleges that on March 5, 2007, he attempted to file an administrative appeal regarding the assault incident, but it was illegally held and was not addressed by the CSP Inmate Appeals Office. Plaintiff alleges that on March 6, 2007, he attempted to file a duplicate appeal by placing it in the Formal Level Appeal Box. Plaintiff alleges he was interviewed in the classification room by Lt. Tracy, Sgt. Garcia, and Sgt. Auid about the March 2, 2007 assault and battery complaint, and nothing was done to protect him at the interview. Plaintiff also alleges that Supervisor Sergeant J. Moore was indifferent to his complaint about the Second Watch denying him food.

There is no constitutional right to an inmate appeals process. The Ninth Circuit has held that prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), *citing* Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). The non-existence of, or the failure of prison officials to properly implement an administrative appeals process within the prison system does not raise constitutional concerns. Mann, 855 F.2d at 640. See also, Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir.1993); Flick v. Alba, 932 F.2d 728 (8th Cir.1991); Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D.Ill.1982) ("[A

prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"). A failure to process a grievance does not state a constitutional violation. Buckley, 997 F.2d at 495. State regulations give rise to a liberty interest protected by the Due Process Clause of the federal constitution only if those regulations pertain to "freedom from restraint" that "imposes a typical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

Plaintiff has alleged no facts that demonstrate that he had a liberty interest in being granted an interview, in having his appeal addressed by the CSP Inmate Appeals Office, or in being "protected" at the interview. Nor do the allegations in the complaint allege facts sufficient to give rise to a constitutional violation for defendant Moore's indifference to plaintiff's complaint. Therefore, plaintiff fails to state a claim against any of the defendants for violation of his rights to due process for their conduct in handling prison grievance procedures.

### b. *False Incident Reports*

Plaintiff also alleges that defendants staged incidents against him and filed false incident reports, accusing him of delaying a peace officer, assaulting a peace officer, threatening staff, disrespecting with potential for violence, and aggravated battery on a peace officer, resulting in plaintiff being sanctioned loss of credits, loss of yard privileges, and loss of "appliance," TV and radio.

The Supreme Court has concluded that prisoners have no liberty interest in good-time credits or in not losing privileges. See Wolff, 418 U.S. at 557; also see Sandin, 515 U.S. at 485-86. Therefore, plaintiff fails to state a claim against defendants for violation of his rights to due process for loss of credits, loss of yard privileges, and loss of "appliance," TV and radio.

### F. Second Cause of Action -- Conspiracy under § 1983

In the context of conspiracy claims brought pursuant to section 1983, a complaint must "allege [some] facts to support the existence of a conspiracy among the defendants." Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992); Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621, 626 (9th Cir. 1988). Plaintiff must allege that defendants conspired or

1  acted jointly in concert and that some overt act was done in furtherance of the conspiracy.  Sykes v.

2  State of California, 497 F.2d 197, 200 (9th Cir. 1974).

3         A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting

4  of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001)

5  (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir.

6  1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d

7  1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121,

8  1126 (9th Cir. 1989)).  "'To be liable, each participant in the conspiracy need not know the exact

9  details of the plan, but each participant must at least share the common objective of the conspiracy.'"

10  Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).         Plaintiff alleges

11  that on February 16, 2007, defendants Barron, Singh, and Witherspoon "colluded" to re-house

12  plaintiff to enable a premeditated assault and battery upon plaintiff orchestrated by defendants Moore

13  and Castro.  Plaintiff also alleges that on March 2, 2007, defendants Barron, Scott, Singh, Castro,

14  Hammon, Lonloria, Castillo, Acosta, Sgt. A. Garcia, Trujillo, and Pascua "colluded" to conceal an

15  assault on plaintiff by defendant Castro, a falsified incident report, and false charges filed against

16  plaintiff.  Plaintiff further alleges that on January 16, 2008, defendant Castro conspired with

17  defendants Naranjo, C/O Garcia, and Luna to retaliate against plaintiff by serving him a "sabatoged"

18  food tray.

19         In addition, plaintiff alleges that "all defendants" conspired to deny plaintiff equal protection,

20  to cultivate a environment of intimidation, fear, and violence, to violate the Eighth Amendment by

21  staging assaults, to deprive plaintiff of due process, to slander plaintiff's character, and to retaliate

22  against plaintiff for filing grievances.  These allegations are conclusory and fail to allege facts against

23  specific named defendants.  A plaintiff must allege facts, not simply conclusions, that show that an

24  individual was personally involved in the deprivation of his civil rights." Barren v. Harrington, 152

25  F.3d 1193, 1194 (9th Cir. 1998).

26         Plaintiff's allegations do not allege any facts demonstrating that defendants shared a common

27  objective of a conspiracy or had "an agreement or meeting of the minds" to violate plaintiff's

28  ///

constitutional rights." Therefore, plaintiff fails to state a cognizable claim for conspiracy against any of the defendants under section 1983.

### G.   Third Cause of Action

#### 1.   *Supervisory Liability*

Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Although federal pleading standards are broad, some facts must be

alleged to support claims under section 1983. See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

Additionally, the argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) citing Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir.2005); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir.1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir.1996).

Plaintiff alleges that supervisor Sergeant J. Moore was indifferent to his complaint about the Second Watch denying him food and refused to reprimand staff who denied plaintiff a scheduled

"blood draw." Plaintiff also alleges that training officers Adams, Junious, Ortiz, Lopez, Keener, and Rousseau; and facility sergeants Moore, Garcia, Acosta, Dicks, Auids, Trujillo, and Martinez failed to provide training, supervision and discipline regarding duty assignments, building operations and procedure, lawful use of force, and deliberate indifference to the safety and lives of the inmates.

Plaintiff has not alleged facts indicating that any of the defendants personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen, 885 F.2d at 646.   Therefore, plaintiff fails to state a claim against any of the defendants for violations of his constitutional rights under section 1983 based on supervisory liability.

**H.**   **Fourth Cause of Action - Failure to Protect under the Eighth Amendment**

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain . . . ." Rhodes, 452 U.S. at 347.   Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit, 682 F.2d at 1246 . Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Id. at 1250; Farmer v. Brennan, 511 U.S. 825, 833 (1994).  To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to a substantial risk of serious harm to the inmates's safety. Id.at 834.  The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Id.(citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).   Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety." Id. at 837.

Plaintiff alleges that defendants "devised, ordered, implemented and enforced policies, procedures, and guidelines that allowed staff and correctional officers to instigate and promulgate assaults on inmates [including plaintiff] in [a] retaliatory manner[s]." However, plaintiff fails to link any named defendant with an act or omission to act demonstrating he or she knew of and disregarded an excessive risk to plaintiff's safety when devising, ordering, implementing and enforcing policies,

14

procedures and guidelines.  Therefore, plaintiff fails to state a cognizable claim for failure to protect under the Eighth Amendment against any of the defendants under section 1983 based on policies, procedures, and guidelines.

## I.     Fifth Cause of Action - Retaliation under the First Amendment

"Within the prison context, a viable claim of First Amendment retaliation entails five elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir.2005) (*citations omitted*).  An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under Section 1983.  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

In assessing the fourth requirement, the court at the pleading stage should ask " 'whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.' " Id. at 568, *quoting* Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir.1999). "The 'government' to which the First Amendment guarantees a right of redress of grievances includes prison authorities, as it includes other administrative arms and units of government." Bradley v. Hall,64 F.3d 1276, 1279 (9th Cir.1995), *citing* Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir.1989).   Plaintiff alleges that on September 20, 2006, defendant Castro deliberately denied him breakfast and lunch out of retaliation for plaintiff's submission of a complaint to Supervisor Moore about an incident occurring on September 19, 2006.

Plaintiff also alleges that defendants fabricated accusations against him in retaliation for his exercise of protected conduct, resulting in plaintiff being unfairly disciplined.  Specifically, plaintiff alleges as follows:  On September 21, 2006, defendants Castro and Moore fabricated an incident and disciplined him, in an effort to silence him out of retaliation for plaintiff's exercise of protected conduct.  On October 12, 2006, defendants Castro and Flores refused to allow plaintiff his scheduled walk alone yard release, then filed a disciplinary report against him for delaying a peace officer, falsely exaggerating the incident, in retaliation for prison complaints filed by plaintiff.  On October 12, 2006, defendant Rousseau found plaintiff guilty of the offense falsified by Castro and ratified

by Moore, and sanctioned plaintiff 90 days loss of credit and confined him to quarters for 10 days. On November 10, 2006, Supervisor Lt. S. Pina found plaintiff guilty of an offense falsified by defendant Castro and ratified by defendant Sgt. R. Alara, and sanctioned plaintiff 90 days loss of credit, 10 days loss of yard privileges, and 30 days loss of appliances, such as TV or radio.  On February 5, 2007, defendants Moore, Espinoza, and Williams had plaintiff's appliance disconnected following a staged incident which also resulted in 10 days strip cell status for plaintiff.  On May 14, 2007, defendants Docanto, Licon, Payne, and Sgt. Dicks staged an incident; then Docanto falsely indicted plaintiff for threatening a peace officer.  On August 13, 2007, C/Os Payne, Licon, John Doe, and Sgt. Dicks staged an incident, then falsely claimed plaintiff had committed battery on a peace officer.  On August 23, 2007, C/Os Payne, Licon, John Doe, and Sgt. Auid staged an incident, charged plaintiff with delaying a peace officer and, out of retaliation, failed to feed plaintiff his dinner meal.

Plaintiff alleges that on September 6, 2007, he was interviewed by the Institutional Classification Committee who decided to transfer him to Pelican Bay State Prison out of retaliation.

Plaintiff alleges that on December 10, 2007, he placed a prison appeal in the mail to CSP Warden Derral Adams; defendant Naranjo opened and read it, withheld it from the mail and boasted about his actions, then defamed plaintiff as a sexual deviate, out of retaliation. On January 15, 2008, plaintiff alleges he mailed a habeas corpus petition to Kings County Superior Court; C/O Garcia opened it, illegally read it, and alerted staff (who had assaulted plaintiff on March 2, 2007) about the subject matter of the petition being sent. On January 16, 2008, Castro conspired with Naranjo, C/O Garcia, and Luna to retaliate against plaintiff by serving a sabatoged food tray.

Plaintiff alleges that on January 17, 2008, defendant Naranjo illegally opened, read and alerted others of plaintiff's complaint for assault and battery on March 2, 2007.   On January 19, 2008, defendants Barron and Singh conspired with defendant Castro to assault plaintiff and served plaintiff a sabatoged food tray, which Naranjo boastfully delivered to plaintiff's cell.

Plaintiff alleges that staff members "sabatoged" his food trays to silence and punish him for exercising protected conduct.  Specifically, plaintiff alleges that during the months of September 2006 through January 2008, defendants Barron, Carrol, Castro, Cheema, Docanto, Dominguez,

Espinoza, C/O Garcia, Hammon, Hernandez, Jamison, Jorben, Licon, Luna, Magnas, Moore, Moreno, Mussleman, Naranjo, Payne, Parker, Perez, Pruneda, Rodriguez, Romero, Scott, Singh, Wildes, Williams, and John/Jane Does served him tainted food trays. Plaintiff alleges that on November 23, 2006, defendants Cheema, Espinoza, Williams, and John/Jane Does brought him a Thanksgiving food tray with burned meat and snuff/chew mixed in with the yams, then openly boasted about what they had done. Plaintiff also alleges that on April 11, 2007, defendants Hernandez, Dominguez, Payne, Docanto, Licon, and Rodriguez tainted plaintiff's canteen purchase.

Plaintiff alleges that defendants retaliated against him by retaining him in the Segregated Housing Unit ("SHU") as an active gang associate, which he was not, because he exercised his First Amendment right to association.

Plaintiff alleges that defendants slandered his character openly and surreptitiously in retaliation of protected conduct, creating a hostile atmosphere of hate, disrespect and ridicule of the plaintiff. Specifically, plaintiff alleges as follows: On October 5, 2006, C/Os Williams, Moreno, Espinoza, and Cheema openly defamed plaintiff as a child molester during tray pickup at Third Watch. On November 14, 2006, C/Os Castro, Jorben, Singh, and Wildes induced inmate Ruccinni to openly defame plaintiff within the unit as a child molester in exchange for extra food and coffee during Second Watch. On November 24, 2006, defendants Castro, Singh, Hammon, and John Does refused plaintiff's request for the Supervisor to lodge a complaint about the condition of his Thanksgiving food tray and solicited inmate Ruccinni to openly defame plaintiff as a child molester and rapist, in exchange for coffee packs. On March 12, 2007, C/O J. Castro solicited inmates to spread information that plaintiff is a child molester, rapist, and snitch, rewarding them with packages and extra appliances, such as TV and radios. On December 10, 2007, plaintiff placed a prison appeal in the mail to CSP Warden Derral Adams. C/O Naranjo opened and read it, withheld it from the mail and boasted about it, and defamed plaintiff as a sexual deviate in retaliation. On January 19, 2008, defendant Naranjo openly defamed plaintiff as a child molester and sexual deviate. On January 26, 2008, defendants Kelly and C/O Martinez openly berated plaintiff as a "child molester being fed in cell 25" in retaliation for plaintiff filing complaints.

///

Plaintiff alleges that on March 6, 2007, Sgt. Moore reassigned plaintiff's housing out of retaliation to silence and punish him. Plaintiff alleges that on July 5, 2005, he was reviewed by the classification committee for inactive gang association status; while plaintiff was outside in the walk alone cage, Sgt. Moore and Lt. Keener instructed IGI Campbell to search plaintiff's cell to delay his inactive gang status, in retaliation for protected conduct.

Plaintiff's allegations in the complaint are sufficient to give rise to a claim for relief against defendants Adams, Auid, Barron, Carrol, Castro, Cheema, Dicks, Docanto, Dominguez, Espinoza, Flores, C/O Garcia, Hammon, Hernandez, Jamison, Jorben, Keener, Kelly, Licon, Luna, Magnas, C/O Martinez, Moore,  Moreno, Mussleman, Naranjo, Parker, Perez, Payne, Pruneda, Rodriguez, Romero, Scott, and Singh, Wildes, Williams, and John/Jane Does for retaliation.  However, plaintiff does not specifically link any of the other named individuals to an act or omission giving rise to a retaliation claim.

**J.**     **Sixth Cause of Action - Cruel and Unusual Punishment**

Plaintiff alleges that defendants were deliberately indifferent to the risk of retaliation against him when they erroneously classified him as an "active gang member" associate and slandered his character by referring to him as a child molester, rapist, and snitch.

**1.**     ***Failure to Protect***

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. See Heptad v. Ray, 682 F.2d 1237, 1250 (9th Cir.1982).  Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment if they act with deliberate indifference to the threat of serious harm or injury to an inmate by another prisoner. See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir.1986); Heptad, 682 F.2d at 1250; see also Valandingham, 866 F.2d at 1138 (deliberately spreading rumor that prisoner is snitch may violate right to be protected from violence while in state custody).

Plaintiff alleges that defendants slandered his character openly, creating a hostile atmosphere in which he was in danger of bodily harm.  Specifically, plaintiff alleges as follows:  On October 5, 2006, defendants Williams, Moreno, and Cheema referred to plaintiff as a child molester during tray pickup at Third Watch.  On November 14, 2006, defendants Castro, Jorben, Singh and Wildes

caused inmate Ruccinni to openly defame plaintiff as a child molester within the Unit in exchange for extra food and coffee during the Second Watch. On November 24, 2006, defendants Castro, Singh, Hammon, and John Does refused plaintiff's request for the Supervisor to lodge a complaint about the condition of his Thanksgiving food tray and solicited inmate Ruccinni to openly defame plaintiff as a child molester and rapist, in exchange for coffee packs.  On March 12, 2007, Officer Castro solicited inmates to brand plaintiff as a child molester, rapist and snitch, rewarding them with packages and extra appliances, such as TVs and radios. On December 10, 2007, plaintiff placed a prison appeal in mail to CSP Warden Derral Adams, and defendant Naranjo opened and read it, withheld it from the mail and boasted about it, then defamed plaintiff as a sexual deviate.  On January 19, 2008, defendant Naranjo openly defamed plaintiff as a child molester and sexual deviate. On January 26, 2008, defendants Kelly and C/O Martinez openly referred to plaintiff as a "child molester being fed in cell 25."

Plaintiff states cognizable claims against defendants Williams, Moreno, Cheema, Castro, Jorben, Singh, Wildes, Hammon, John Does, Naranjo, Kelly and C/O Martinez for failure to protect him under the Eighth Amendment.

### 2. *Defamation*

Plaintiff claims that defendants defamed him when they referred to him as a child molester, rapist, and snitch.  "Defamation is an invasion of the interest in reputation."  Gilbert v. Sykes, 147 Cal. App.4th 13, 27, 53 Cal.Rptr.3d 752, 764 (2007) (internal quotations and citation omitted). Under California law, "[t]he tort of defamation involves (a) a publication that is (b) false, © defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or causes special damages." Taus v. Loftus, 40 Cal.4th 683, 720, 151 P.3d 1185, 1209 (2007) (internal quotations and citation omitted).  Reputation alone does not implicate any "liberty" or "property" interests sufficient to invoke the procedural protection of the due process clause, and something more than simple defamation by a state official must be involved to establish a claim under §1983. Paul v. Davis, 424 U.S. 693, 701 (1976).   Therefore, plaintiff fails to state a claim under section 1983 against any of the defendants for defamation.

///

### K.     Seventh Cause of Action - Eighth Amendment & Fourteenth Amendment

Plaintiff claims that defendants violated his rights under the Eighth and Fourteenth Amendments when they erroneously re-validated him as a current active gang member associate and retained him in the SHU, despite the knowledge that he qualified for inactive gang status and should be released from the SHU. Plaintiff alleges that on July 25, 2005, he was reviewed by the classification committee at CSP, and members of the committee used erroneous information to re-validate him as a current active gang member associate and retain him in the SHU.

Plaintiff alleges that defendants deprived plaintiff of his rights to be free from the SHU and indefinite confinement.  He alleges that he was not given a fair hearing allowing testimony and presentation of evidence, that unreliable information was used to re-validate and retain him in the SHU, and that he was not given "procedural protections."

Plaintiff alleges he was  not given an opportunity to present views to the officials making the decision, that he was not given meaningful classification reviews, that defendants refused to follow their own rules and release plaintiff from the SHU, that the system of gang validation and debriefing was used as a pretext to justify plaintiff's indefinite commitment in the SHU facility, that defendants failed to show the information used to confirm plaintiff's re-validation was reliable, and that defendants' rules and regulations are vague (fail to define key terms, lack clarity for their enforcement, delegate unbridled discretion to defendants, reach a broad range of innocent conduct, and lack sufficient reasonable minimal standards to guide defendants in fairly judging whether plaintiff is a current gang associate).

### 1.     *Eighth Amendment*

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (quotations and citations omitted).  "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." Id. at 9 (citation omitted).  With respect to these types of claims, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those

1    deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form

2    the basis of an Eighth Amendment violation."  Id. at 9 (quotations and citations omitted).

3    With regard to plaintiff's claim that he was erroneously classified as a current active gang

4    member associate and retained in the SHU, the allegations do not rise to the level of an Eighth

5    Amendment violation.  Moreover, plaintiff has not identified which defendants violated his rights.

6    Thus, plaintiff fails to state a claim under the Eighth Amendment based on his validation as a gang

7    member and retention in the SHU.

8                              **2.    *Fourteenth Amendment – Due Process***

9    The Due Process Clause protects prisoners from being deprived of liberty without due

10   process of law.  Wolff, 418 U.S. at 556.  In order to state a cause of action for deprivation of

11   procedural due process, a plaintiff must first establish the existence of a liberty interest for which the

12   protection is sought.  Liberty interests may arise from the Due Process Clause itself or from state

13   law.  Hewitt, 459 U.S. at 466-68.  The existence of a liberty interest created by state law is

14   determined by focusing on the nature of the deprivation.  Sandin, 515 U.S. at 481-84.  Liberty

15   interests created by state law are generally limited to freedom from restraint which "imposes atypical

16   and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Id. at 484.

17                              **a.    *Classification status***

18   Plaintiff alleges that defendants mis-classified him as a gang associate.  The Due Process

19   Clause itself does not confer on inmates a liberty interest in a particular classification status.  See

20   Moody v. Dagged, 429 U.S. 78, 88, n.9 (1976).  However, under certain circumstances, labeling a

21   prisoner with a particular classification may implicate a liberty interest subject to the protections of

22   due process.  Neal v. Shimoga, 131 F.3d 818, 827 (9th Cir. 1997) ("[T]he stigmatizing consequences

23   of the attachment of the 'sex offender' label coupled with the subjection of the targeted inmate to

24   a mandatory treatment program whose successful completion is a precondition for parole eligibility

25   create the kind of deprivations of liberty that require procedural protections.").

26   Plaintiff may be able to state a due process claim based on his mis-classification as a gang

27   associate.  However, plaintiff's complaint fails to identify which defendants, if any, participated in

28   the alleged mis-classification.  Without such details, the court cannot guess as to how the mis-

                                           21

classification might have resulted in conditions of confinement that would implicate a due process interest, or what actions the individual defendants might have taken that have violated plaintiff's rights. Therefore, plaintiff fails to state a due process claim against any of the defendants based on his classification as a gang associate.

### b.    *SHU term*

Plaintiff alleges that he was retained in the SHU without justification. The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff, 418 U.S. at 556. The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation. See Hewitt, 459 U.S. at 466-68; see also May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence) (quotations omitted); Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000) (plaintiff's placement and retention in the SHU was within range of confinement normally expected by inmates in relation to ordinary incidents of prison life and, therefore, plaintiff had no protected liberty interest in being free from confinement in the SHU) (quotations omitted). However, the placement of an inmate in the Segregated Housing Unit indeterminately may amount to a deprivation of a liberty interest of "real substance" within the meaning of Sandin. See Wilkinson v. Austin, 545 U.S. 209, 223 (2005).

Assuming that confinement in the SHU for an indeterminate period implicates a liberty interest, the court turns to plaintiff's allegations that he was denied the procedural due process protections he is guaranteed under federal law. Plaintiff is entitled to adequate notice, an opportunity to be heard, and periodic review. Toussaint v. McCarthy, 801 F.2d 1080, 1100-01 (9th Cir. 1986);. In addition, "there must be 'some evidence in the record' to support the decision to segregate the inmate," and this evidence "must have 'some indicia of reliability.'" Superintendent v. Hill, 472 U.S. 445, 454 (1985).

In the instant case, plaintiff alleges that he was not given an opportunity to present views to the officials making the decision, that he was not given meaningful classification reviews, and that

erroneous, unreliable information was used to re-validate and retain him in the SHU. However, it is not clear from plaintiff's complaint who made the decision to assess plaintiff an indeterminate SHU term. Plaintiff alleges that he was reviewed by the classification committee, but he does not link any named defendant(s) to the deprivations. In order to pursue a claim under section 1983 based on an evidentiary or procedural challenge, plaintiff must allege facts linking the evidentiary or procedural deficiencies to the individual(s) who made the decision to confine plaintiff in the SHU.

Plaintiff's claim concerning meaningless classification reviews suffers from the same deficiency. Plaintiff alleges that defendants' rules and regulations are vague (fail to define key terms, lack clarity for their enforcement, delegate unbridled discretion to defendants, reach a broad range of innocent conduct, and lack sufficient reasonable minimal standards to guide defendants in fairly judging whether plaintiff is a current gang associate). However, plaintiff must name the individuals responsible for providing him with reviews that were meaningless and/or allege some facts linking defendants in supervisory positions to the enactment or enforcement of a policy so deficient that the policy 'itself [was] a repudiation of constitutional rights' and was 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Therefore, based on the foregoing, plaintiff fails to state a claim under the Due Process Clause based on his retention in the SHU against any of the named defendants.

## L.    Eighth Cause of Action - Conspiracy under § 1985

Plaintiff alleges that defendants were part of a conspiracy pursuant to 28 U.S.C. § 1985. Section 1985 proscribes conspiracies to interfere with an individual's civil rights. To state a cause of action under section 1985(3), plaintiff must allege: (1) a conspiracy, (2) to deprive any person or class of persons of the equal protection of the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or deprivation of any right or privilege of a citizen of the United States. Gillispie v. Civiletti, 629 F.2d 637, 641 (9th Cir. 1980); Giffin v. Breckenridge, 403 U.S. 88, 102-03 (1971). Section 1985 applies only where there is a racial or other class-based discriminatory animus behind the conspirators' actions. Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).

In interpreting these standards, the Ninth Circuit has held that a claim under § 1985 must allege specific facts to support the allegation that defendants conspired together. Karim-Panahi, 839 F.2d at 626. A mere allegation of conspiracy without factual specificity is insufficient to state a claim under 42 U.S.C. § 1985. Id.; Sanchez v. City of Santa Anna, 936 F.2d 1027, 1039 (9th Cir. 1991).

Plaintiff alleges that defendants Moore, Dicks, Sgt. Martinez, Auids, Acosta, Sgt. Garcia, Trujillo, Keener, Castro, Barron, Singh, Scott, Pruneda, Hammon, Payne, Licon, Docanto, Lonloria, Castillo, Kelly, Solano, Naranjo, Dominguez, C/O Garcia, Pascua, and Campbell conspired "to deprive plaintiff of his constitutional rights," in violation of 42 U.S.C. § 1983 and § 1985. Also, plaintiff alleges that all named defendants conspired to deprive him of his right to Equal Protection of the law. However, plaintiff does not allege facts to support the allegation that any of the defendants actually entered into a conspiracy. As such, plaintiff's complaint fails to state a claim for conspiracy for which relief can be granted under § 1985 against any of the defendants.

**M.**     **Ninth Cause of Action - Equal Protection**

          ***Discrimination***

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). An equal protection claim may be established in two ways. First, a plaintiff establishes an equal protection claim by showing that the defendant has intentionally discriminated on the basis of the plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001). Under this theory of equal protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's membership in a suspect class, such as race. Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).

If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); San Antonio School District v. Rodriguez, 411 U.S. 1 (1972); Squaw Valley Development Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir.2004); SeaRiver Mar. Fin.

24

1   Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002). To state an equal protection claim under
2   this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the
3   plaintiff was intentionally treated differently from others similarly situated; and (3) there is no
4   rational basis for the difference in treatment. Village of Willowbrook, 528 U.S. at 564.  If an equal
5   protection claim is based upon the defendant's selective enforcement of a valid law or rule, a
6   plaintiff must show that the selective enforcement is based upon an "impermissible motive." Squaw
7   Valley Development Co.,  375 F.3d at 944; Freeman v. City of Santa Ana, 68 F.3d 1180, 1187 (9th
8   Cir.1995).

9        Plaintiff alleges that defendants discriminated against him on the basis of his association with
10  a racial group.  However, plaintiff fails to allege facts showing that any of the defendants  acted as
11  a result of plaintiff's membership in a suspect class, such as race, or that plaintiff is a member of an
12  identifiable class and defendants intentionally treated him differently than other similarly situated
13  individuals with no rational basis.  Therefore, plaintiff fails to establish a claim for discrimination
14  under the Equal Protection Clause against any of the defendants.

15       **N.    Tenth and Eleventh Causes of Action - Due Process and State Created Liberty
16            Interest**

17       Plaintiff alleges that his rights under the Due Process Clause were violated when he was mis-
18  identified as an active gang associate and retained in the SHU.  As stated above under plaintiff's
19  Seventh Cause of Action, plaintiff fails to state a claim under the Due Process Clause based on his
20  retention in the SHU.

21       **O.    Screening of Outgoing Mail**

22       Plaintiff alleges that on October 22, 2006, defendant Espinoza took confidential mail
23  addressed to the CSP inmate appeals office and illegally opened it, read the contents, and returned
24  it to plaintiff, claiming he couldn't mail it. Plaintiff alleges that on January 24, 2008, he placed a
25  petition for writ of habeas corpus in the mail to Kings County Superior Court, and C/Os Naranjo and
26  Garcia both opened and read documents outside of plaintiff's presence.

27       Censorship of outgoing prisoner mail is justified if the following criteria are met: (1) the
28  regulation furthers "an important or substantial government interest unrelated to the suppression of

expression" and (2) "the limitation on First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved." Procunier v. Martinez, 416 U.S. 396, 413-14 (1974) (limited by Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989). Prison officials may visually inspect outgoing mail to determine whether it contains contraband material which threatens prison security or material threatening the safety of the recipient. See Witherow v. Paff, 52 F.3d 264, 266 (9th Cir. 1995); Royce v. Superior Court, 779 F.2d 573, 574-75 (9th Cir. 1986).

Plaintiff fails to allege facts showing that defendants' screening of his outgoing mail did not further an important or substantial government interest unrelated to the suppression of expression. Therefore, plaintiff fails to state a claim under section 1983 for screening of his outgoing mail.

**V.      CONCLUSION**

The court finds that plaintiff's complaint states a cognizable Eighth Amendment claim for adverse conditions of confinement against defendants Cheema, Espinoza, Williams, and John/Jane Does for knowingly serving him food mixed with snuff/chew; a cognizable Eighth Amendment claim for excessive force against defendant Castro for assaulting plaintiff; a cognizable Eighth Amendment claim against defendant Pascua for inadequate medical care; a cognizable Eighth Amendment claim for failure to protect against defendants Castro, Cheema, Hammon, Jorben, Kelly, C/O Martinez, Moreno, Naranjo, Singh, Wildes, Williams, and John Does; and a cognizable claim under the First Amendment against defendants Adams, Auid, Barron, Carrol, Castro, Cheema, Dicks, Docanto, Dominguez, Espinoza, Flores, C/O Garcia, Hammon, Hernandez, Jamison, Jorben, Keener, Kelly, Licon, Luna, Magnas, C/O Martinez, Moore, Moreno, Mussleman, Naranjo, Parker, Perez, Payne, Pruneda, Rodriguez, Romero, Scott, Singh, Wildes, Williams, and John/Jane Does for retaliation. However, plaintiff's complaint does not contain any other cognizable claims for relief.

The court will provide plaintiff with time to either file a First Amended Complaint curing the deficiencies identified above, or to notify the court of his willingness to proceed only on the claims found cognizable by the court. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires." In addition, "[l]eave to amend

///

26

1  should be granted if it appears at all possible that the plaintiff can correct the defect." Lopez v.

2  Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal citations omitted).

3      In the event plaintiff wishes to amend the complaint, he must demonstrate in his First

4  Amended Complaint how the conditions complained of resulted in a deprivation of his constitutional

5  rights. See, Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The First Amended Complaint must

6  specifically state how each defendant is involved. Further, there can be no liability under 42 U.S.C.

7  § 1983 unless there is some affirmative link or connection between a defendant's actions and the

8  claimed deprivation. Rizzo, 423 U.S. at 362; May v. Enomoto, 633 F.2d 164, 167 (9th Cir.1980);

9  Johnson, 588 F.2d at 743.

10     Plaintiff is advised that his best interests are served if the amended complaint is clear, concise

11  and complete. Plaintiff's First Amended Complaint must satisfy the requirement of Federal Rule

12  of Civil Procedure 8(a), which calls for a "short and plain statement of the claim showing that the

13  pleader is entitled to relief." Rule 8(a) does not require an elaborate recitation of every fact a

14  plaintiff may ultimately rely upon at trial, but only a statement sufficient to "give the defendant fair

15  notice of what the plaintiff's claim is and the grounds upon which it rests." Conley, 355 U.S. at 46.

16     Plaintiff should note that although he has been given the opportunity to amend, it is not for

17  the purpose of adding new defendants relating to issues arising after April 22, 2008. In

18  addition, plaintiff should take care to include only those claims that have been exhausted prior to the

19  initiation of this suit on April 22, 2008.

20     Finally, plaintiff is advised that Local Rule 15-220 requires that an amended complaint be

21  complete in itself without reference to any prior pleading. As a general rule, an amended complaint

22  supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an

23  amended complaint is filed, the original complaint no longer serves any function in the case.

24  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement

25  of each defendant must be sufficiently alleged. The First Amended Complaint should be clearly and

26  boldly titled "FIRST AMENDED COMPLAINT," refer to the appropriate case number, and be an

27  original signed under penalty of perjury.

28  ///

In the event plaintiff wishes to proceed only on the cognizable claims found by the court, the court will issue findings and recommendations to dismiss those claims not cognizable and any other claims subject to dismissal as discussed above.  The court will then forward plaintiff summonses and USM-285 forms to fill out and return to the court in order to effect service on the defendants.  Upon the return of these forms, the court will direct the U.S. Marshal to initiate service of process on defendants.

Based on the foregoing, IT IS HEREBY ORDERED that:

1.     The Clerk of Court is DIRECTED to send plaintiff a blank civil rights complaint form;

2.     The complaint is DISMISSED with leave to amend;

3.     Within thirty (30) days from the date of service of this order, plaintiff SHALL either:

   a.     File a First Amended Complaint curing the deficiencies identified by the court in this order, or

   b.     Notify the court in writing that he does not wish to file an amended complaint and instead wishes to proceed only on the cognizable claims for relief set forth in this order;

4.     Plaintiff is forewarned that failure to comply with this order will result in a recommendation that this action be dismissed in its entirety.

IT IS SO ORDERED.

**Dated:**    **June 20, 2008**                    **/s/ Sandra M. Snyder**
                                        UNITED STATES MAGISTRATE JUDGE